UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN DOLAN,** | : | |
| | : | |
| Petitioner | : | **CIVIL NO. 1:CV-04-2023** |
| | : | |
| v. | : | **(Judge Rambo)** |
| | : | |
| **EDWARD KLEM,** *et al.*, | : | |
| | : | |
| Respondents | : | |

# **M E M O R A N D U M**

## I.   **Introduction**

Petitioner John Dolan, an inmate at the State Correctional Institution-Mahanoy in Frackville, Pennsylvania, initiated the present action with a *pro se* petition for writ of habeas corpus filed pursuant to the provisions of 28 U.S.C. § 2254.  Petitioner claims that: (1) the Pennsylvania Board of Probation and Parole ("PBPP") applied amended standards to his reparole application, in contravention of the ex post facto clause of the United States Constitution, and (2) he was denied his liberty interest in reparole without due process, in violation of the Fifth and Fourteenth Amendments. Respondents argue that the petition should be dismissed for failure to exhaust state court remedies.  Also pending is Petitioner's motion for partial summary judgment (Doc. 9) and Petitioner's motion for bail hearing (Doc. 23).  The parties have briefed

the issues, and the matter is ripe for disposition.  For the reasons set forth below, the petition will be denied, and the Petitioner's motions will be dismissed as moot.

**II.     Discussion**

**A.  Exhaustion of State Court Remedies**

Petitioner filed the present petition pursuant to the provisions of 28 U.S.C. § 2254.  Under § 2254 (b)(1), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court ***shall not be granted*** unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State. . ." (emphasis added).  "An applicant shall not be deemed to have exhausted the remedies available in the court of the State, within the meaning of this section, if he has the right under the law of the state to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  It is well-settled that a state prisoner must present his federal constitutional issues to the highest court of the state before he can present the issues through federal habeas corpus.  28 U.S.C. § 2254(b),(c); *Rose v. Lundy*, 455 U.S. 509, 515-20 (1982); *Doctor v. Walters*, 96 F.3d 675 (3d Cir. 1996).  The exhaustion requirement "rests upon the principles of comity and judicial economy [and] provides state courts with an initial opportunity to consider and correct alleged violations of prisoners' rights without disruption from the federal

2

courts." *Hankins v. Fulcomer*, 941 F.2d 246, 249 (3d Cir. 1991); *see also Gibson*, 805 F.2d at 138.

However, exhaustion is not a jurisdictional requirement, *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995), and failure to exhaust is not an insurmountable bar to consideration of the merits of a habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An application for writ of habeas corpus may be denied on the merits, notwithstanding a failure to exhaust state court remedies, 28 U.S.C. § 2254(b), and courts may exercise discretion to determine whether comity and federalism will be better served by requiring exhaustion or by addressing the merits of the petition. *Granberry*, 481 U.S. at 131. If, for example, the petition presents an unresolved issue of state law, comity and judicial economy may dictate dismissal for failure to exhaust state court remedies to allow the state courts an opportunity to address the issue. By contrast, if the issue presented by the petition is well-settled, and the petitioner fails to raise a viable claim, the interests of the state courts, federal courts, the petitioner, and the respondents would be best served by disposition of the petition without further state and federal proceedings. *Id.* at 134-35. The United States Court of Appeals for the Third Circuit has held that district courts reviewing habeas petitions may dismiss plainly meritless unexhausted claims. *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1230 (3d Cir. 1992). Accordingly, although Petitioner has not exhausted his

state court remedies on his ex post facto claim, his petition is meritless, and the petition will be addressed on the merits.

### B. <u>Ex Post Facto Claim</u>

Petitioner correctly notes that the Third Circuit has held that the PBPP's initial interpretation of the 1996 amendments to the Pennsylvania parole statute, found at 61 P.S. § 331.1, violated the ex post facto clause. *Mickens-Thomas v. Vaughn*, 321 F.3d 374, 393 (3d Cir. 2003). In *Mickens-Thomas*, the Third Circuit addressed a habeas petition filed by a prisoner whose life sentence had been commuted to a term of years with parole eligibility. The petitioner claimed that application of revised parole standards violated the ex post facto clause, and he was entitled to review under the standards in place at the time of conviction. The Third Circuit concluded that the revised Parole Board policy, "although partly discretionary, is still subject to ex post facto analysis when there are sufficiently discernable criteria to suggest to a reviewing body that the new retroactive policies are being applied against the offender's interest." *Id.* at 386. "An adverse change in one's prospects for release disadvantages a prisoner just as surely as an upward change in the minimum duration of sentence." *Id.* at 392. The Third Circuit held that retroactive application of "changes in the parole laws made after conviction" that adversely impacted the likelihood of parole violated the ex post facto clause.

4

The Third Circuit noted that prior to 1996, the PBPP's internal policies required it to weigh the inmate's rehabilitation and liberty interest with the interest of public safety in parole evaluations.[1]  *Id*. at 378.  Specifically, the Third Circuit noted "that the [PBPP's] Manual of Operations and Procedures recognized that '[p]robation and parole services *must* consider that offenders can change their behavior patterns when desirous, capable, and given the opportunity, help, dignity, and respect they deserve as human beings.' "  *Id*. (emphasis added).  In December 1996, the Pennsylvania legislature added new language to the "aspirational introductory provision" of the parole statute, requiring that the "public safety must be considered first and foremost in the [PBPP's] execution of its mission."  *Id*. at 377 (internal quotation omitted).  The Third circuit concluded that the PBPP "mistakenly construed the 1996 statutory change to signify a substantive change in its parole function."  *Id*. at 391.

---

[1]The Third Circuit explained that

> [i]n considering an inmate for parole, the Board must weigh numerous factors relative to the welfare of the client and the safety of the community, including seriousness of the offense; length of the sentence; institutional adjustment (behavior and program adjustment); and assessment of the effect of rehabilitation services while incarcerated. Whether the individual can be safely supervised in the community, personality characteristics, any history of family violence, strength of the parole plan (home and employment), testimony from victims, and opinions of the sentencing judge and prosecuting attorney must also be considered.

*Mickens-Thomas*, 321 F.3d at 378 (internal quotation omitted).

Notwithstanding this conclusion, the Third Circuit also acknowledged a recent decision of the Pennsylvania Supreme Court, *Winklespecht v. Pa. Bd. of Prob. & Parole*, 813 A.2d 688 (Pa. 2002), which clarified that the amended § 331.1 did not constitute binding language requiring the PBPP to place the greatest weight on consideration of the public safety. *Id*. However, the Pennsylvania Supreme Court concluded that the *Winklespecht* decision, "made *after* the Board's actions on Thomas' parole, came too late to alter the Board's view of the statutory amendment on the outcome of the case." *Id*. (emphasis in original).

In *Mickens-Thomas*, as well as other non-precedential cases subsequently addressed by the Third Circuit, the appropriate remedy for an ex post facto violation in parole review, is for the district court to remand the parole applications to the PBPP for re-adjudication applying the pre-1996 law. *Mickens-Thomas*, 321 F.3d at 393; *see also McLaurin v. Larkins*, 2003 WL 22147497 (3d Cir. Sept. 18, 2003); *Hallawell v. Gillis*, 2003 WL 1919371, *8 (3d Cir. Apr. 23, 2003). However, the class of individuals entitled to such relief is very narrow. Except for individuals whose parole decisions were made after the adoption of the 1996 changes, and before *Winklespecht* clarified the fact that the amendment did not change the administration of parole policies, subsequent parole reviews are made with the understanding that the 1996 amendments did not change the analysis used in the parole proceedings.

6

At issue in the instant case is Petitioner's reparole denial recorded on April 7, 2004 (Doc. 1, Ex. A). The decision was rendered well after the PBPP had the benefit of the *Winklespecht* decision, and specified Petitioner's prior history of supervision failures as the reason for denial of reparole.[2] *Id*. In the decision, the PBPP not only stated that it took the required factors into account, but also noted the specific reason why Petitioner had been denied reparole. This reason is consistent with consideration of personality characteristics, assessment of the effect of rehabilitation services while incarcerated, and whether the individual can be safely supervised in the community. These factors are set forth in the pre-1996 requirements of the Act, *Mickens-Thomas*, 321 F.3d at 378, and Petitioner has not produced any evidence that the decision was unduly influenced by contemplation of the public safety first and foremost. Thus, the court finds no evidence that the April 7, 2004 reparole decision violated the ex post facto clause.

**C. Due Process Claim**

Petitioner also claims that Respondents violated "Petitioner's right to due process . . . [by violation of state law] so as to deny Petitioner a state created liberty interest in remaining on parole." (Doc. 1 at 4.) At issue here is a determination by the

---

[2] Although Petitioner's sworn affidavit (Doc. 21) challenges the validity of the most recent supervision failure, he concedes in his petition that he has been released two times previously, and parole was revoked for parole failures each time (Doc. 1 at ¶¶ 7-9.)

PBPP on revocation of this Petitioner's parole status.  The due process requirements in that context differ from those of a criminal prosecution.  "[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).  "Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole."  *Id.* at 483.  Although the Supreme Court recognized that the State need not endure the burden of a new adversary criminal trial, parole revocation hearings require some due process protections.  "They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the

evidence relied on and reasons for revoking parole." *Id.* at 489.  Although Petitioner makes a general allegation of due process violation, he has presented no evidence to support this conclusion, and the court finds nothing in the record to substantiate the claim.  Accordingly, this claim will be denied.

### III. Conclusion

Although Petitioner concedes that he had not exhausted his state court remedies, the court may deny his petition on the merits.  A review of the record supports a conclusion that the PBPP has not applied inappropriate standards to Petitioner's parole application in violation of the ex post facto clause.  Further, there is nothing in the record to support Petitioner's contention of due process violation.  An appropriate order will issue.

    s/Sylvia H. Rambo  
    SYLVIA H. RAMBO  
    United States District Judge

Dated: May 10, 2005.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN DOLAN,** | : | |
| | : | |
| Petitioner | : | **CIVIL NO. 1:CV-04-2023** |
| | : | |
| v. | : | **(Judge Rambo)** |
| | : | |
| **EDWARD KLEM,** *et al.*, | : | |
| | : | |
| Respondents | : | |

## O R D E R

In accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) Petitioner's motion for partial summary judgment (Doc. 9) and Petitioner's motion for hearing (Doc. 23) are **DISMISSED** as moot.

3) The Clerk of Court is directed to close this case.

4) There is no basis for the issuance of a certificate of appealability.

                                             s/Sylvia H. Rambo
                                             SYLVIA H. RAMBO
                                             United States District Judge

Dated: May 10, 2005.